JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant Roy Hudson ("appellant") appeals from the sentence imposed by the trial court. Having reviewed the arguments of the parties and the pertinent law, we hereby affirm the trial court.
 I {¶ 2} According to the case, a jury found appellant Roy Hudson guilty of six counts of drug-related criminal activity: two counts of possession of drugs, two counts of trafficking in cocaine, and two counts of preparation of drugs for sale. Appellant was indicted by the Cuyahoga County Grand Jury on April 5, 2000 in a multi-count indictment, charging count one, possession of drugs, R.C. 2925.11; count two, possession of drugs, R.C. 2925.11; count three, trafficking in cocaine, R.C.2925.03; count four, trafficking in cocaine, R.C. 2925.03; count five, preparation of drugs for sale, R.C. 2925.07; and count six, preparation of drugs for sale, R.C. 2925.07. A jury trial commenced on October 16, 2000. On November 24, 2000, appellant was sentenced to three years on counts one and two, to run concurrent with each other but consecutive to counts three and four and concurrent to counts five and six; three years on each of counts three and four, to run concurrent with each other; 18 months on each of counts five and six, to run concurrent with each other; therefore resulting in a total of six years for appellant to serve.
 {¶ 3} The facts in the case are relatively straightforward. Drug Enforcement Agency ("DEA") officers, with the aid of an informant, were working in tandem with the Cleveland Police Department. The officers arranged for the informant to purchase a large quantity of cocaine. The informant claimed to know where he could purchase large quantities of cocaine. The police told the informant to contact Larry Lavelle Smith ("Smith"). Smith indicated that he could not personally supply the quantity the informant wanted, but he had a source who could.
 {¶ 4} The police hid a radio transmitter on the informant and gave him $1,000 in cash on the buy date. The informant used a pager to communicate with Smith. A DEA agent explained that pagers were the usual method of communication, with the buyer simply inputting in numeric form the dollar amount of cocaine to be bought; for example, inputting "900" means that the buyer wants to purchase $900 worth of cocaine. This is done to prevent any explicit mention of drugs in the event of a police investigation.
 {¶ 5} The informant went to Smith's house and waited nearly two hours for the appellant to arrive. A tape recording of the radio transmissions showed that when appellant arrived, someone in the house said "there he is." The appellant handed .75 ounces of cocaine to Smith, who then handed the cocaine to the informant. The informant paid $600 and left. The appellant left the house shortly after the informant. A DEA agent tried to follow appellant, but the appellant drove as though he knew he was being followed. The DEA agent called off surveillance so as not to be discovered.
 {¶ 6} Two months later, the police used the informant to set up a second cocaine buy with appellant. The informant paged appellant directly and inputted "900" as the amount of drugs to buy. During a second telephone call with appellant, the informant clarified the time for their meeting. The transaction went without incident. The appellant arrived at Smith's house driving a car belonging to his sister. Appellant handed the drugs to the informant, who then counted out the correct amount of money. The transaction ended quickly. The appellant testified and denied participating in the transaction. He claimed that his association with the informant began because the informant sold automobiles as a side business and he wished to purchase one. He claimed the money he gave the informant constituted a down payment for a car, and that there were no drugs present at the scene.
 {¶ 7} On October, 10, 2000, trial commenced in appellant's drug case and appellant was convicted. Appellant appealed his conviction and sentence. The conviction was affirmed, but the sentence was reversed and remanded. After the court of appeals remanded the case, the trial court reimposed the original sentence on May 30, 2002. However, in doing so, the trial court agreed with this court that it needed to make the sufficient findings pursuant to R.C. 2929.14(E)(4). The trial court went on to state its findings on the record.
 II {¶ 8} Appellant's sole assignment of error states the following: "The record does not support the findings articulated by the trial court during re-sentencing to support consecutive sentences under R.C. 2929.14(E)(4) and the trial court erred in re-imposing such consecutive sentences."
 {¶ 9} R.C. 2929.14(E)(4) governs multiple prison terms and states the following:
"(E)(4) If multiple prison terms are imposed on an offenderfor convictions of multiple offenses, the court may require theoffender to serve the prison terms consecutively if the courtfinds that the consecutive service is necessary to protect thepublic from future crime or to punish the offender and thatconsecutive sentences are not disproportionate to the seriousnessof the offender's conduct and to the danger the offender poses tothe public, and if the court also finds any of the following:
The offender committed one or more of the multiple offenseswhile the offender was awaiting trial or sentencing, was under asanction imposed pursuant to section 2929.16, 2929.17, or 2929.18of the Revised Code, or was under post-release control for aprior offense.
 At least two of the multiple offenses were committed as partof one or more courses of conduct, and the harm caused by two ormore of the multiple offenses so committed was so great orunusual that no single prison term for any of the offensescommitted as part of any of the courses of conduct adequatelyreflects the seriousness of the offender's conduct.
 The offender's history of criminal conduct demonstrates thatconsecutive sentences are necessary to protect the public fromfuture crime by the offender." (Emphasis added.)
 {¶ 10} In order to impose consecutive sentences, the court must find that consecutive sentences are necessary in order to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. See R.C. 2929.14(E)(4). The court must also find (1) the offender was awaiting trial or sentencing on another offense, was under community control, or was under post-release control; (2) the harm caused was great or unusual and that no single prison term would adequately reflect the seriousness of the offender's conduct; (3) the offender's history of criminal conduct demonstrated that consecutive sentences were necessary to protect the public from future crime by the offender. Id.
 {¶ 11} It is with the above standards in mind that we now address the case at bar. According to the record, the trial court held a resentencing hearing on May 30, 2002, and allowed appellant and his counsel to speak regarding appellant's past. Appellant stated that he now knew that he was wrong and that he had come to the understanding that he was selling drugs.[1]
The trial court then asked appellant if he realized that his admission that he sold drugs meant that he had lied at his earlier trial and that he had committed perjury.[2]
Appellant answered yes, thereby stating that he knew he had committed perjury.
 {¶ 12} The trial court judge then went on to state that he agreed with this court in that he did not make the sufficient findings pursuant to R.C. 2929.14(E)(4) in the initial sentencing hearing and that he was now prepared to make the necessary findings.[3] The trial judge states his reasons for imposing consecutive sentences in the May 30, 2002 resentencing hearing. In the record, the trial judge states several reasons why this case is an unusual drug transaction. The trial judge states:
"* * * They were very unusual drug transactions. These werenot a stem case. This was not a one rock case. This was not therecreational use of crack cocaine. This defendant, in twoseparate drug transactions, was involved in selling nearly 100grams of crack cocaine. * * * On 10-19-99 you sold 54.9 grams.Two separate transactions. Two separate amounts. This is anextensive amount of drug trafficking.
 Now, a further review of the PSI would indicate this offenderhas been convicted of drug law violations in the past. In 1997 hewas convicted in 223131 and he was sentenced to a state penalinstitution. Sentence suspended, probation granted, but found tobe a probation violator. Probation was continued.
 He was once again found to be a probation violator. Probationwas continued. It's not clear to me whether he successfullycompleted probation before picking up a second case in 1991. Thatagain was a drug case and this time it was a drug traffickingcase, 268630, at which point he was convicted once again of amajor drug offense, selling substantial amounts of cocaine in thecommunity and he was sentenced to a state penal institution for 5to 25 years with 5 years actual period of incarceration, creditfor time served. Isn't that correct, Mr. Hudson?
 THE DEFENDANT: Yes, still on parole."[4]
 {¶ 13} The trial judge stated that the appellant has been on probation, has violated probation, has done time in a state penal institution, has been convicted of drug abuse, and has been convicted of trafficking significant amounts of cocaine.[5]
The judge went on to state before resentencing appellant that in order to protect the public from future crimes and to punish appellant for his involvement, consecutive periods of incarceration are necessary, and not disproportionate to what is considered to be unusual drug offense.[6] He further stated in the record that these kinds of drug offenses have done great harm to our community. The trial court continued on and stated that appellant has already done five years of actual incarceration for crack cocaine, and it would therefore be inappropriate to impose a concurrent period of incarceration.
 {¶ 14} In the case at issue, the trial judge properly followed the requirements of the statute. According to the statute, the trial court shall hold a sentencing hearing before imposing a sentence upon an offender who was convicted of or pleaded guilty to a felony. R.C. 2929.19(A). In addition, the court shall inform the offender of the verdict and ask him if he wishes to make a statement. R.C. 2929.19(A). Furthermore, the trial court shall consider the record, any information presented at the hearing, and the presentence report. R.C. 2929.19(B)(1). In the case sub judice, the trial court held a hearing, asked appellant if he wished to make a statement, and considered the required information.
 {¶ 15} We find the trial court to have sentenced appellant properly. The record clearly and convincingly follows the statutory requirements of R.C. 2929.19 and 2929.14(E)(4)(C). Furthermore, the record in this case supports the findings articulated by the trial court during resentencing and supports consecutive sentences under R.C. 2929.14(E)(4). The trial court did not err in reimposing consecutive sentences.
 {¶ 16} Appellant's assignment of error is overruled.
 {¶ 17} The judgment is affirmed.
Judgment affirmed.
 Blackmon, P.J., and Gallagher, J., concur.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
[1] Tr. at 4-5.
[2] See May 30, 2002 resentencing hearing, Tr. at 6.
[3] Tr. at 7.
[4] Tr. at 9-11.
[5] Tr. at 12.
[6] Tr. at 12. The trial judge states: "So I come to the conclusion that to protect the public from future crimes and to punish you for your involvement, consecutive periods for the incarceration are necessary, and they are not disproportionate to what I consider to be unusual drug offenses."