The STATE of Ohio, Appellee,

v.

SINGLETON, Appellant.

[Cite as *State v. Singleton,* 169 Ohio App.3d 585, 2006-Ohio-6314.]

Court of Appeals of Ohio,
Second District, Montgomery County.

Nos. 21417 and 21418.

Decided Dec. 1, 2006.

Deirdre E. Logan, Dayton Chief Prosecuting Attorney, and Mary E. Welsh, Assistant Prosecuting Attorney, for appellee.

Shawn M. Irish, for appellant.

FAIN, Judge.

{¶ 1} Defendant-appellant, Jan J. Singleton, appeals from his conviction and sentence on two charges of failure to comply with Dayton Housing Code 93.05 of the Dayton General Ordinances. Singleton also appeals from an order finding him in contempt and fining him $250 in each case.

{¶ 2} We agree with Singleton that the record fails to reflect that he actually tendered a plea of no contest upon which the trial court predicated its finding of guilt. We also find no court order in the record, the violation of which could constitute a basis for the contempt of court findings. Consequently, the judgment of the trial court convicting Singleton of the charged offenses is reversed, and this cause is remanded for further proceedings with respect to those charges. The finding of contempt, and the imposition of two $250 fines for contempt, is reversed and vacated.

I

{¶ 3} In August 2005, two complaints were filed charging Singleton with two violations of Dayton General Ordinances 93.05. Both charges alleged that Singleton had failed to comply with the orders of a Dayton housing inspector.

{¶ 4} Singleton initially pleaded not guilty to both charges, but evidently later decided to plead no contest. On October 26, 2005, Singleton appeared with his counsel before an acting judge of the Dayton Municipal Court, who was a retired municipal judge from a nearby county. The initial colloquy at that hearing, which was evidently intended to constitute a plea hearing, is worth setting out in full:

{¶ 5} "The Court: Do you have any additional information you wish to provide?

{¶ 6} "Ms. Welsh [representing the City of Dayton]: I'd defer at this time to Mr. Cox.

{¶ 7} "Mr. Cox [representing Singleton]: Well, Your Honor, it's my understanding there has not been a plea entered yet. Well there's been a not guilty plea entered, but as a result of conversations with the prosecuting attorney, Mr. Singleton is prepared to enter no contest pleas to both of the charges.

{¶ 8} "I have discussed it with him. I believe he understands that, and his rights in the matter, and he's prepared to go ahead.

{¶ 9} "Ms. Welsh: Your Honor, in light of that no contest plea, we'd refer you to photographs that we have taken on the date of the violation. We also have some photographs taken this morning. We would also refer you to the legal order attached to each one of the files and unfortunately, Your Honor, I believe the clerk's office switched them, so you have East Third Street in the North Van Leer file. If you have would [sic] take that into consideration, we'll switch those when you're finished. Thank you. I apologize.

{¶ 10} "Mr. Cox: And we'll stipulate to the information for purposes of the plea and disposition this morning.

{¶ 11} "Ms. Welsh: Thank you.

{¶ 12} "The Court: Based upon the order of the inspectors, the photographs, and the complaint, the Court would find you guilty of the charges. Do you understand that, Mr. Singleton?

{¶ 13} "The Defendant: Yes, ma'am.

{¶ 14} "The Court: Do you understand that upon finding of guilty you are giving up your right to have a trial by Jury where your lawyer could question witnesses against you, require any witnesses you want at the time to testify to appear in court. You would have the right to remain silent at your trial, and the State would have to prove the charges against you beyond a reasonable doubt?

{¶ 15} "A. Yes, ma'am.

{¶ 16} "Q. Do you understand that each of the cases carries a possible sixty day jail sentence and Five Hundred Dollar fine?

{¶ 17} "A. Yes.

{¶ 18} "Q. Is anyone promising you anything or pressuring you in any way to plea [sic] to either one of the charges?

{¶ 19} "A. No, ma'am.

{¶ 20} "Q. Are you doing this of your own free will?

{¶ 21} "A. Yes.

{¶ 22} "The Court: Mr. Cox?

{¶ 23} "Mr. Cox: Your Honor, again based on discussions with the prosecuting attorney, we'd ask this case be set over for sentencing to give Mr. Singleton an opportunity to show that he is making progress.

{¶ 24} "We have discussed a date with the prosecuting attorney, we feel by November 16, I believe was the date, Mr. Singleton would be able to, if not have completed his repairs, but at least show proof of what he's telling us that there will be a closing on some other properties to give him funds to buy supplies to get this work done, so we would ask the Court to set it over 'till November 16, for either status or sentencing so he'll have that opportunity to bring that documentation before the court.

{¶ 25} "The Court: Is there anything you would like to say, Mr. Singleton?

{¶ 26} "The Defendant: No, ma'am.

{¶ 27} "The Court: What property are you anticipating selling, and at what stage in the process is it?

{¶ 28} "The Defendant: They have set the closing for November 9th. It's a vacant lot at the corner of Van Lear and McKinley. Miller Valentine was in the area and they approached me about the property, and I told them fine.

{¶ 29} "The Court: Okay. Anything from the City?

{¶ 30} "Ms. Welsh: No, Your Honor

{¶ 31} "The Court: Are you in contact with contractors or are you planning on doing the work?

{¶ 32} "The Defendant: I'm doing the work myself.

{¶ 33} "The Court: So you're anticipating painting after November 9th?

{¶ 34} "The Defendant: Oil base."

{¶ 35} The colloquy continued, with the court concerning itself with Singleton's plans for the properties and the timing of the work. Thereafter, during the same hearing, the trial court imposed sentence, as follows:

{¶ 36} "The Court: The Court will assess cost on each case. I will impose a 30 day jail sentence. I will give you a stay of execution on that jail sentence until November 16, at 8:30. At that time the Court will review any proof of compliance that you provide to the Court, and in light of that, will review the jail sentence.

{¶ 37} "So you can earn your way out of jail by being in compliance with these properties on November 16.

{¶ 38} "* * *

{¶ 39} "Mr. Cox: I'm sure there will be some progress made. It was my understanding then, we aren't looking for full compliance by the sixteenth when he's going to get money on the ninth? You wanted full compliance?

{¶ 40} "The Court: Let me make clear what my expectations are.

{¶ 41} "Ms. Welsh: Thank you.

{¶ 42} "The Court: For proof of compliance with orders that affect the exterior of the property.

{¶ 43} "Ms. Welsh: Your Honor, in this Court that usually just means trash and debris and the vegetation.

{¶ 44} "The Court: I would assume there is something in the order about the exterior appearance.

{¶ 45} "Ms. Welsh: Appearance. That's fine, Your Honor. Thank you.

{¶ 46} "Mr. Cox: So does the Court expect the painting to be done? Gutters to be repaired?

{¶ 47} "The Court: Yes.

{¶ 48} "Mr. Cox: I can tell you right now that won't be able to be done.

{¶ 49} "The Court: Well.

{¶ 50} "Mr. Cox: And you're telling me, Miss Welsh, that was our agreement?

{¶ 51} "The Court: No, I didn't hear her say that. I see it as my call, that this is what the sentence is dependent upon, and also the review of the Judge who's here on November 9th.

{¶ 52} "Mr. Cox: Thank you, Your Honor.

{¶ 53} "The Court: Thank you."

{¶ 54} Whereupon, the hearing on October 26, 2005, concluded.

{¶ 55} At a status hearing on November 16, 2005, before the regular judge, the status of the work performed on the properties was reviewed. At the conclusion of that hearing, the trial court made the following statement:

{¶ 56} "The Court: All I can say, if you can't afford the business, you need to get out of this kind of business. Anyway, on each case I'm going to make a finding of contempt for failing to abate the violations.

{¶ 57} "I'm gonna [sic] impose a fine of $250 on each case, order that the violations be corrected by December 13, 2005. I'm gonna set it for status for December 14 at 2:30. Stay of the jail sentence is continued to December 14."

{¶ 58} Singleton next appeared in the trial court, this time represented by Shawn Irish, on December 14, 2005. After a brief review of the progress, or lack of progress, with respect to the properties, the trial court concluded as follows:

{¶ 59} "The Court: Well the visiting Judge back on October 26th sentenced you to thirty days. She stayed it 'till November 16 for proof of compliance with record, and it hasn't been done. I stayed it on November 16 'till today, so it's still not done, so I guess—

{¶ 60} "Mr. Irish: Has been limited with limited funds. He's been selling his parking lots.

{¶ 61} "The Court: I didn't make the sentence. I'm putting it into effect. So it looks like the sentence will be executed. It's not something I like to do, but people take on more than they can chew sometimes. They'll run concurrent. So, have a seat."

{¶ 62} Singleton appeals from his conviction and sentence, and also from the contempt sanction of $250 in each case.

## II

{¶ 63} Singleton's first assignment of error is as follows:

{¶ 64} "The trial court erred in finding defendant guilty when the defendant never actually entered a plea of no contest and when the court failed to inform the defendant of the effect of such a plea."

{¶ 65} In support of his argument that the trial court failed to inform him of the effect of his plea, Singleton submits that the trial court did not advise him that a plea of no contest is not an admission of guilt, but is merely an admission of the truth of the facts alleged in the charging instrument, and that the plea and admission shall not be used against the defendant in any subsequent civil or criminal proceeding. Crim.R. 11(B)(2). We agree with the state that the trial court's failure to have advised Singleton of these aspects of a no-contest plea would not have prejudiced him, and therefore would not have constituted a substantial failure to comply with the Rule, because this advice, had it been given, would have made the no-contest plea more attractive to Singleton, not less.

{¶ 66} The requirements of Crim.R. 11 set forth certain duties of the trial court that it must perform before it may accept a plea of guilty or of no contest. The division of the rule applicable in this case is Crim.R. 11(E), which provides:

{¶ 67} "In misdemeanor cases involving petty offenses the court may refuse to accept a plea of guilty or no contest, and shall not accept such pleas without first informing the defendant of the effect of the plea of guilty, no contest, and not guilty.

{¶ 68} "The counsel provisions of Crim.R. 44(B) and (C) apply to division (E) of this rule."

{¶ 69} As the state notes in its brief, strict or absolute compliance with Crim.R. 11 is not required; "the test is whether the trial court exercised 'substantial compliance' with Crim.R. 11 when accepting a no contest plea." The state cites several cases for this proposition, the first of which is *State v. Sabatino* (1995), 102 Ohio App.3d 483, 657 N.E.2d 527.

{¶ 70} If the issue before us were whether the trial court substantially complied with the duties imposed upon it by Crim.R. 11 before it might properly accept a no-contest plea, then we would agree with the state that the trial court in this case did, in fact, substantially comply with the requirements of the Rule. But we agree with Singleton that there is a more fundamental issue in this case. Before a no-contest plea may be accepted, it must first be tendered.

{¶ 71} From our review of the record, there seems little doubt that Singleton intended to plead no contest at the October 26, 2005 hearing, and that everyone left that hearing under the impression that a no-contest plea had been tendered. But the record does not reflect that Singleton ever expressly pleaded no contest at that hearing. The tendering of a plea of no contest or of guilty has substantial consequences to a criminal defendant. For that reason, we are not prepared to recognize an implied plea. In our view, an implied plea would be inconsistent with the requirement in Crim.R. 11(A) that "[a]ll other pleas [besides a plea of not guilty by reason of insanity] may be made orally." In our view, to effectuate the tendering of a no-contest plea, a criminal defendant must do so by either signing a writing reflecting an express plea, or orally, either by saying, affirmatively, that he is pleading "no contest" or by responding affirmatively to the trial court's question, "are you pleading no contest," phrased in the present tense, indicative mood. In our view, this is consistent with the holding of the court in *Chagrin Falls v. Katelanos* (1988), 54 Ohio App.3d 157, 561 N.E.2d 992, which we approve and follow.

{¶ 72} Because the record does not reflect that Singleton expressly tendered a plea of no contest, there was no plea for the trial court to accept, and consequently no basis for the judgment of conviction. Singleton's first assignment of error is sustained.

### III

{¶ 73} Singleton's second assignment of error is as follows:

{¶ 74} "The trial court erred in summarily finding the defendant guilty of contempt of court."

{¶ 75} The state, in its brief, relies upon R.C. 2705.02(A) as support for the finding of contempt in this case. That division provides:

{¶ 76} "A person guilty of any of the following acts may be punished as for a contempt:

{¶ 77} "(A) Disobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or officer."

{¶ 78} We have found no writ, process, order, rule, judgment, or command of a court or officer that Singleton can be said to have violated. The term "officer" does not appear to be defined in the statute, but the context indicates that an officer of the court is meant. To construe this statute otherwise would be contrary to the general requirement that "sections of the Revised Code defining offenses or penalties shall be strictly construed against the state, and liberally construed in favor of the accused."

{¶ 79} At the hearing on October 26, 2005, Singleton was not ordered to do anything; he was sentenced, and the sentence was stayed to give him a chance to bring his properties into compliance with the orders of the Dayton housing inspector that he had been found to have violated. The implication of the trial court's remarks at the sentencing hearing was that if Singleton brought his properties into compliance, his jail sentence would not actually be carried into execution. This is not the same as the trial court's having ordered Singleton to bring his properties into compliance. To the contrary, he had a choice: he could either bring the properties into compliance by November 13 or face the prospect that his jail sentence would, in fact, be carried into execution.

{¶ 80} Because we conclude that the record fails to reflect that Singleton was ever under a court order concerning his properties, it necessarily follows that there was no basis for finding him in contempt. Singleton's second assignment of error is sustained.

## IV

{¶ 81} Singleton's first assignment of error having been sustained, the judgment of conviction is reversed, and this cause is remanded for further proceedings consistent with this opinion. Singleton's second assignment of error having been sustained, the finding of contempt, and the imposition of a fine of $250 in each of the cases, as a sanction for contempt, is reversed and vacated.

Judgment reversed
and cause remanded.

DONOVAN, J., concurs.

WOLFF, J., concurs in part and dissents in part.

WOLFF, Judge, concurring in part and dissenting in part.

{¶ 82} I agree that the second assignment should be sustained, but I would overrule the first assignment.

{¶ 83} While I certainly do not endorse "implied" pleas of guilty or no contest, I also do not believe Singleton's failure to expressly plead no contest should be a basis for reversal *in this case.*

{¶ 84} There can be no doubt that all concerned intended that the questions of guilt on the two charges would be resolved by no-contest pleas and that the conduct of all was consistent with that intention.

{¶ 85} The error here was invited. Having expressed his client's intent to plead no contest, Singleton's counsel—an officer of the court—would have violated no obligation to Singleton had he reminded the court to ask Singleton how he was pleading or whether he was pleading no contest.