[Cite as *State v. Murphy*, 2011-Ohio-5416.]

IN THE COURT OF APPEALS FOR CLARK COUNTY, OHIO

STATE OF OHIO                         :

    Plaintiff-Appellee                :        C.A. CASE NO.     2010 CA 81

v.                                    :        T.C. NO.    10CR290

ROBERT MURPHY                         :        (Criminal appeal from
                                       Common Pleas Court)

    Defendant-Appellant               :

                                      :

. . . . . . . . . .

**O P I N I O N**

Rendered on the   21st   day of    October   , 2011.

. . . . . . . . . .

ANDREW R. PICEK, Atty. Reg. No. 0082121, Assistant Prosecuting Attorney, 50 E. Columbia Street, 4th Floor, P. O. Box 1608, Springfield, Ohio 45501
    Attorney for Plaintiff-Appellee

JON PAUL RION, Atty. Reg. No. 0067020, 130 W. Second Street, Suite 2150, P. O. Box 1262, Dayton, Ohio 45402
    Attorney for Defendant-Appellant

. . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-appellant Robert Murphy appeals from his conviction and sentence for one count of breaking and entering, in violation of R.C. 2911.13(A), a felony of the fifth degree, and one count of burglary, in violation of R.C. 2911.12(A)(3), a felony of

the third degree.  Murphy filed a timely notice of appeal with this Court on August 12, 2010.

I

{¶ 2}  The instant appeals stems from two incidents which occurred during April of 2010.  On April 13, 2010, deputies were dispatched to Advantage Car Credit located in Clark County, Ohio, in order to investigate a break-in.  The break-in was reported by an employee who was opening the business that day after she observed a broken window at the back of the building.  Upon entering, the witness discovered that a television was missing, and the interior had been ransacked.  The employee ran to a nearby bank and called 911.  During their subsequent investigation, the deputies obtained information implicating Murphy as the perpetrator of the break-in, and he was arrested and taken to jail.

{¶ 3}  The second incident occurred on April 29, 2010, when deputies were dispatched to the 1200 block of Wendell Avenue in New Carlisle, Ohio, after a witness reported a suspicious white male carrying a blue bag and a large TV wrapped in plastic walking down Wendell Avenue.  The witness further reported that the suspicious male walked to a residence located at 1223 Wendell Avenue and went inside.  Upon arriving and approaching the residence, the deputy observed a white van backing out of the driveway.  The deputy initiated a traffic stop of the vehicle in which Murphy was a passenger.  The reporting witness identified Murphy as the suspicious male earlier seen walking down Wendell Avenue.  The driver of the van, Kelly Tapia, informed the deputies that she had reluctantly given Murphy a ride in order to get him away from her children who were present at 1223 Wendell Avenue.  Tapia gave the deputies permission to search her van.  The

deputies located a large flat screen television and a blue bag containing a computer monitor and other electrical devices inside the van.

{¶ 4} Murphy admitted that he had placed the television and the blue bag in Tapia's van. Murphy stated that the television previously belonged to his brother, Frankie. Murphy stated that he had taken the television in payment for a car. Murphy did not provide an explanation for the items contained in the blue bag. Murphy insisted that the deputies travel to Frankie's residence located at 1029 Wendell Avenue in order to verify his story.

{¶ 5} Upon their arrival at 1029 Wendell Avenue, the deputies spoke with the resident of the house, Brendian Morris, who explained that Frankie had moved away approximately two weeks earlier and left nothing behind. The deputies discovered a Dell tower computer and an HP printer in the grass on the side of the house. Morris stated that he did not recognize the items taken from Tapia's van nor the computer and printer found on the side of the house. Upon inspection, a detective noticed that the computer tower had a repair tag on the side ostensibly bearing the name and address of the owner. The detective sent the deputies to the address on the computer, 1030 Grissom Avenue. The deputies discovered that the Grissom Avenue residence had been broken into and that items had been removed. Many of the items recovered from Murphy were found to have been stolen from the residence. Additionally, Murphy's shoes matched footprints left at the scene, and the backyard of the Grissom Avenue residence connected to the backyard of the home where Murphy initially claimed that his brother lived.

{¶ 6} On May 10, 2010, Murphy was indicted for two counts of burglary, in

violation of R.C. 2911.12(A)(1) and (4), and one count of breaking and entering, in violation of R.C. 2911.13(A). At his arraignment on May 17, 2010, Murphy pled not guilty to all counts in the indictment. Murphy filed a motion to suppress regarding the statements he made to the deputies. Murphy later withdrew the motion after the parties negotiated a plea agreement wherein Murphy agreed to plead guilty to one count of breaking and entering, in violation of R.C. 2911.13(A), a felony of the fifth degree, and one count of burglary, in violation of R.C. 2911.12(A)(3), a felony of the third degree. In return, the State agreed to recommend that Murphy be sentenced to community control and in-patient drug treatment at West Central. The plea hearing occurred on June 15, 2010.

{¶ 7} At the sentencing hearing held on July 12, 2010, however, the trial court did not follow the State's recommendation regarding in-patient treatment at West Central. Murphy was sentenced to one year for breaking and entering, and four years for burglary, the sentences to run consecutively for an aggregate sentence of five years in prison.

{¶ 8} It is from this judgment that Murphy now appeals.

II

{¶ 9} Murphy's first assignment of error is as follows:

{¶ 10} "THE TRIAL COURT ABUSED ITS DISCRETION IN IMPOSING APPELLANT'S SENTENCE."

{¶ 11} In his first assignment, Murphy contends that his sentence was improper because the trial court failed to consider R.C. 2929.11 and R.C. 2929.12. Specifically, Murphy argues that the trial court failed to affirmatively address the relevant sentencing statutes during the dispositional hearing. While noting that the trial court did, in fact,

discuss his criminal history and prior drug treatment, Murphy asserts that the trial court "should be, at minimum, required to mention its consideration of these statutes on the record." In the alternative, Murphy argues that the trial court abused its discretion when it considered improper factors in determining his sentence.

{¶ 12} "The overriding purposes of felony sentencing are to protect the public from future

{¶ 13} crime by the offender and others and to punish the offender. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense." R.C. 2929.11(A). A court that imposes a sentence for a felony has discretion to determine the most effective way to comply with the purposes and principles of sentencing set forth in R.C. 2929.11. R.C. 2929.12(A). "Although [*State v*.] *Foster* [109 Ohio St.3d 1, 2006-Ohio-856] eliminated judicial fact-finding, courts have not been relieved of the obligation to consider the overriding purposes of felony sentencing, the seriousness and recidivism factors, or the other relevant considerations set forth in R.C. 2929.11, 2929.12, and 2929.13." *State v. Hairston*, 118 Ohio St.3d 289, 2008-Ohio-2338, ¶ 25.

{¶ 14} We review a felony sentence using a two-step procedure. *State v. Kalish,* 120 Ohio St.3d 23, 2008-Ohio-4912, ¶ 4. "The first step is to 'examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law.'" *State v. Stevens,* 179 Ohio App.3d 97, 2008-Ohio-5775, ¶ 4, quoting *Kalish* at ¶ 4. "If this step is satisfied, the

second step requires that the trial court's decision be 'reviewed under an abuse-of-discretion standard.'" Id. Generally, abuse of discretion is an "appellate court's standard for reviewing a decision that is asserted to be grossly unsound, unreasonable, illegal, or unsupported by the evidence." *State v. Money*, Clark App. No. 2009CA119, 2010-Ohio-6225, ¶13 (internal citations omitted).

{¶ 15} As we recently explained in *State v. Watkins*, 186 Ohio App.3d 619, 2010-Ohio-740:

{¶ 16} "Sentencing errors assigned regarding the trial court's application of R.C. 2929.11 and 2929.12 are reversible or modifiable only upon a finding by clear and convincing evidence that the sentence is contrary to law. *State v. Hawkins,* Greene App. No. 06CA79, ¶8. See, also, *State v. Bowshier,* Clark App No. 08-CA-58, 2009-Ohio-3429, ¶6, citing *State v. Kalish,* 120 Ohio St.3d 23, 2008-Ohio-4912; *State v. Mathis,* 109 Ohio St.3d 54, 2006-Ohio-855. 'Contrary to law means' that a sentencing decision manifestly ignores an issue or factor which a statute requires a court to consider. *Hawkins,* supra, at ¶8, citing *State v. Lofton,* Montgomery App. No. 19852, 2004-Ohio-169, ¶11.

{¶ 17} "When a trial court imposes a sentence that falls within the applicable statutory range, the court is required to consider the purposes and principles set forth in R.C. 2929.11, as well as the recidivism factors enumerated in R.C. 2929.12. *Hawkins,* supra, at ¶8, citing *Mathis,* supra. However, the court need not make any specific findings in order to demonstrate its consideration of those factors. Id. citing *State v. Arnett,* 88 Ohio St.3d 208, 215, 2000-Ohio-301; *State v. Foster,* 109 Ohio St.3d 1, 2006-Ohio-855, ¶42."

{¶ 18} In the instant case, it is undisputed that the trial court did not specifically mention either R.C. 2929.11 or R.C. 2929.12 at the sentencing hearing. The court, however, did reference both statutes in its judgment entry. A trial court speaks through its journal entries. *State v. Brooke,* 113 Ohio St.3d 199, 2007-Ohio-1533, ¶47, citation omitted. In its judgment entry, the trial court stated as follows:

{¶ 19} "The Court considered the record, oral statements of counsel, the defendant's statement, the pre-sentence investigation report, the principles and purposes of sentencing under Ohio Revised Code Section 2929.11, and has balanced the seriousness and recidivism factors [set forth in] Ohio Revised Code Section 2929.12."

{¶ 20} Because the trial court affirmatively stated in its judgment entry that it considered the factors set out in both R.C. 2929.11 and R.C. 2929.12 in imposing Murphy's sentence, that sentence is not contrary to law. *Watkins*, 186 Ohio App.3d at 630.

{¶ 21} Having concluded that Murphy's sentence is not contrary to law, we must now review his sentence under an abuse of discretion standard. Id. at 631. Murphy asserts that certain statements made by the trial court establish that the court considered improper factors when it ignored the recommendation of the State and sentenced him to five years in prison. The trial court abuses its discretion when it considers an improper factor in its sentencing analysis. *State v. Davis*, Washington App. No. 09CA28, 2010-Ohio-555.

{¶ 22} R.C. 2929.12(A) mandates that, in exercising its "discretion, the court

shall consider the factors set forth in divisions (B) and (C) of this section relating to the seriousness of the conduct and the factors provided in divisions (D) and (E) of this section relating to the likelihood of the offender's recidivism and, in addition, may consider any other factors that are relevant to addressing those purposes and principles of sentencing." Accordingly, the trial court had discretion to consider additional factors, but only if those factors are relevant to the proceedings.

{¶ 23} Murphy asserts that the following statements made by the trial court at his disposition clearly establish that the trial court considered improper factors when it sentenced him:

{¶ 24} "The Court: All right. Well, when I took your plea on June15th, and I knew that the State would be recommending community control with West Central, I did have some reservations, seeing that one of the offenses was a burglary, a felony of the third degree.

{¶ 25} "But I was committed to keeping an open mind and waiting until the pre-sentence report came back. I have to tell you that the pre-sentence report has not helped you.

{¶ 26} "I'm not even getting to the offenses yet here, but just looking at your life situation here, you quit high school in the ninth grade. You have two kids. *It doesn't appear that you're paying any child support*?

{¶ 27} "Murphy: Not very much, sir.

{¶ 28} "The Court: *You don't support them so I bet the mom of your kids gets some kind of assistance, which means that all of us here in the courtroom are paying to support your children. ***.*

{¶ 29} "***

{¶ 30} "*So, in summary, you have two kids you are not supporting so the community is supporting them.*

{¶ 31} *"And then instead of saying 'Thank you,' to the community for supporting your kids, you're going out and burglarizing homes and breaking into businesses.*

{¶ 32} *"And then when you get caught, you're coming into the courtroom asking for help. Well, it's not my job to help you. It's my job to punish you.*" (Emphasis added).

{¶ 33} It is vital to avoid both the reality and "perception that no clear standards are being applied, and that the rule of law is imperiled by sentences imposed for no discernible reason other than the subjective reactions of the sentencing judge." *State v. Nichols*, Clark App. No. 2010 CA 60, 2011-Ohio-4671, quoting *Harmelin v. Michigan* (1991), 501 U.S. 957, 1007, 111 S.Ct. 2680, 115 L.Ed.2d 836. This record establishes that the trial court improperly considered Murphy's limited ability to pay child support, as well as assumed and irrelevant facts regarding his children's receipt of "assistance" in weighing the appropriate sentence. The trial court's reliance on these factors was clearly improper. The trial court's apparent indignation over its assumption that Murphy's children received "some kind of assistance" and its resultant impact upon the community was an improper factor upon which to rely when fashioning the appropriate sentence. "Even though it has discretion in choosing an appropriate sentence, when a court considers an improper sentencing factor, it has committed an abuse

of discretion." *State v. Davis*, Washington App. No. 09CA28, 2010-Ohio-555. Indeed, the trial court had the discretion to reject the sentencing recommendation of the State; however, the court abused its discretion when it emphasized Murphy's limited financial ability to support his children and the impact upon the community of paying some kind of assistance when deciding the proper term of imprisonment.

{¶ 34} Additionally, although R.C. 2929.11(A) states that the overriding purposes of felony sentencing is to protect the public from future crime by the offender and others and to punish the offender, the trial court seems to have ignored the fact that, in order to achieve those purposes, it was required to consider, among other things, rehabilitating the offender. *State v. Nichols*, Clark App. No. 2010 CA 60, 2011-Ohio-4671. "[T]he sentencing judge [should] consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Pepper v. United States* (2011), _____ U.S. _____, 131 S.Ct. 1229, 1240, 179 L.Ed.2d 196, citing *Koon v. United States* (1996), 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392. Upon review, we conclude that the trial court abused its discretion when it sentenced Murphy by relying on improper factors which had no bearing upon the offenses to which he pled guilty.

{¶ 35} We also note that the trial court made the following statement before announcing Murphy's sentence:

{¶ 36} "The Court: While the State is recommending community control pursuant to their agreement with you, *I'm assuming that the State wasn't aware of*

*your criminal record.*" (Emphasis added).

**{¶ 37}** This declaration by the trial court only serves to further highlight the inherently presumptive and speculative nature of its reasoning process when it decided to reject the State's recommendation and sentence Murphy to five years in prison.[1] There is no evidence in the record which even remotely suggests that the State was unaware of Murphy's criminal record, thus it was improper for the trial court to assume such. Rather than simply assuming that the State was ignorant of Murphy's prior record, the trial court could have simply questioned the prosecutor in that regard.

**{¶ 38}** Murphy's first assignment of error is sustained.

III

**{¶ 39}** Murphy's second assignment of error is as follows:

**{¶ 40}** "THE TRIAL COURT ERRED IN ACCEPTING APPELLANT'S PLEA AS THE PLEA COLLOQUY DID NOT COMPORT WITH CRIM.R.11 BECAUSE APPELLANT NEVER ORALLY TENDERED A GUILTY PLEA."

**{¶ 41}** In his second assignment, Murphy argues that the trial court erred when it accepted his guilty pleas because he did not orally tender the pleas during the hearing. The tendering of a plea of guilty has substantial consequences to a criminal defendant. *State v. Singleton*, 169 Ohio App.3d 585, 2006-Ohio-6314. In order to effectuate the tendering of a guilty plea, a criminal defendant must do so

---

[1] We note that the pre-sentence investigation report does not reveal that Murphy's children received assistance of any kind. However, even if such a fact had been established, it is wholly immaterial and irrelevant to disposition on these offenses.

by either signing a writing reflecting an express plea, or orally, either by saying affirmatively that he is pleading "guilty" or by responding affirmatively to the trial court's question "are you pleading guilty," phrased in the present tense, indicative mood. See Id.

{¶ 42} We note that the record of the plea hearing contains the following exchange between Murphy and the trial court:

{¶ 43} "The Court: By pleading guilty[,] you would be giving up all of these rights that we've gone over.  Are you telling the Court that you want to give those rights up and *plead guilty to breaking and entering and burglary as a third degree felony*?

{¶ 44} "Murphy: *Yes, sir*."   (Emphasis added).

{¶ 45} In our view, this exchange affirmatively establishes that Murphy orally tendered guilty pleas to the charges against him.  Thus, we conclude that the trial court complied with Crim .R. 11 and did not err when it accepted Murphy's guilty pleas.

{¶ 46} Murphy's second assignment of error is overruled.

IV

{¶ 47} Murphy's first assignment of error having been sustained, his sentence is vacated, and this matter is remanded for re-sentencing in accordance with this opinion.

. . . . . . . . . .

GRADY, P.J. and HALL, J., concur.

Copies mailed to:

Andrew R. Picek
John Paul Rion
Hon. Douglas M. Rastatter