[Cite as *State v. Sanders*, 2012-Ohio-1540.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 97120

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## STEPHEN P. SANDERS

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-538842

**BEFORE:** Celebrezze, J., Blackmon, A.J., and Rocco, J.

**RELEASED AND JOURNALIZED:** April 5, 2012

**ATTORNEY FOR APPELLANT**

Paul Mancino, Jr.
75 Public Square
Suite 1016
Cleveland, Ohio   44113-2098


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
BY:    Oscar E. Albores
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

FRANK D. CELEBREZZE, JR., J.:

**{¶1}** Appellant, Stephen Sanders, appeals his convictions for drug trafficking and possession of criminal tools, arguing that the trial court erred in denying his motion to suppress, the court considered improper factors at sentencing, and the court's plea colloquy was defective. After a thorough review of the record and the law, we affirm appellant's convictions.

## I. Factual and Procedural History

**{¶2}** On June 17, 2010, appellant was traveling on I-271 at a high rate of speed. Village of Orange police officer Sam Borgia initiated a traffic stop of appellant's vehicle for traveling 79 m.p.h. in a 60 m.p.h. zone. Officer Borgia entered the license plate number into his in-car computer system. The vehicle came back registered to appellant and also showed an outstanding traffic warrant for his arrest from the city of Bedford. The warrant information indicated that appellant was armed and dangerous. Officer Borgia also obtained a photograph of appellant on his computer screen, which matched the person seated in the vehicle. Officer Borgia remained in his police car while he waited for backup because of the "armed and dangerous" designation in the warrant. Before backup could arrive, appellant was in the process of opening his vehicle door, and it appeared to Borgia that he was getting out of his vehicle. Officer Borgia then initiated a controlled arrest of appellant by yelling commands, which appellant followed. Appellant walked backwards toward the police car and was ordered to the ground. He

was then handcuffed and asked if he was Stephen Sanders, to which he replied that he was. He was then placed in the back of the police car and informed that he was under arrest. Back-up then arrived.

{¶3} Officer Borgia contacted dispatch to inform them of the situation and to get confirmation of the warrant. He then began searching the vehicle, he said, because there was no person to take possession of it and it would have to be towed. He indicated the search was an inventory search. The dashboard video footage from Officer Borgia's vehicle shows appellant's arrest and the search of his vehicle. Officer Borgia cannot be seen filling out any paperwork while conducting the search, but another officer, identified as Officer Sherwood, filled out the inventory sheet and can be seen on the video.

{¶4} Officer Borgia searched the front passenger compartment and discovered a quantity of marijuana in a zip-top freezer bag in the glove box. He then searched the trunk and discovered an open black plastic garbage bag that contained six more large, zip-top freezer bags of marijuana. At some point during the search, the Bedford warrant was confirmed, but Officer Borgia could not state when.

{¶5} After the discovery of this quantity of marijuana, Officer Borgia radioed to dispatch to inform Bedford that it would no longer receive appellant pursuant to the warrant, but that he would be charged in Orange. Appellant was arrested and charged with drug trafficking, drug possession, and possession of criminal tools.

{¶6} A suppression hearing was conducted on January 26, 2011, where Officer Borgia indicated that the search conducted was an inventory search done prior to towing

appellant's vehicle. The state presented the tow inventory sheet filled out at the scene of appellant's arrest and the village of Orange tow policy. The inventory sheet indicated that it was started at 8:00 p.m. by Officer Sherwood, and the dash camera footage showed that the stop of appellant was initiated at 7:53 p.m. Appellant's identity was confirmed at 7:56 p.m.

{¶7} The trial court found that the police acted in good faith in arresting appellant pursuant to the warrant and that the vehicle could be searched prior to it being towed because there were no other occupants who could take possession of it. The trial court denied appellant's suppression motion. Appellant then entered pleas of no contest to the charges against him, and the trial court found him guilty, merged the trafficking and possession counts, and sentenced appellant to an aggregate sentence of five years in prison — five years for trafficking concurrent to one year for possession of criminal tools, and concurrent to a one-year sentence in another case.

{¶8} Appellant then filed the instant appeal assigning three errors.

## II. Law and Analysis

### A. Inventory Search Incident to Impoundment

{¶9} Appellant first asserts that "[he] was denied due process of law when the court overruled [his] motion to suppress."

{¶10} Appellant argues that the warrant was never produced at the suppression hearing and that Officer Borgia did not confirm the warrant before arresting him or searching the vehicle. Relying on *State v. Smartt*, 61 Ohio App.3d 137, 572 N.E.2d 204

(8th Dist.1989), appellant argues that the state must produce the warrant at the suppression hearing to prove the factual basis for the arrest and inventory search.

{¶11} "Appellate review of a trial court's ruling on a motion to suppress presents mixed questions of law and fact." *State v. McNamara*, 124 Ohio App.3d 706, 710, 707 N.E.2d 589 (4th Dist.1997). An appellate court must accept the factual findings of the trial court as long as they are supported by competent, credible evidence, but may disregard the trial court's factual findings if they are clearly erroneous. *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist.1998). However, the application of the law to those facts is subject to de novo review. *State v. Polk*, 8th Dist. No. 84361, 2005-Ohio-774, ¶ 2.

{¶12} The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures, rendering them per se unreasonable unless an exception applies. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The analysis for a search requires a two-step inquiry where probable cause is required and, if it exists, a search warrant must be obtained unless an exception applies. *State v. Moore*, 90 Ohio St.3d 47, 2000-Ohio-10, 734 N.E.2d 804. "If the state fails to satisfy either step, the evidence seized in the unreasonable search must be suppressed." *Id.* at 49, citing *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *AL Post 763 v. Ohio Liquor Control Comm.*, 82 Ohio St.3d 108, 111, 694 N.E.2d 905 (1998).

{¶13} An inventory search is a well-defined exception to the warrant requirement. *State v. Mesa*, 87 Ohio St.3d 105, 108, 717 N.E.2d 329 (1999), citing *Colorado v.*

*Bertine*, 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987). An inventory search is conducted pursuant to administrative procedures

> to protect an individual's property while it is in police custody, protect police against claims of lost, stolen or vandalized property, and protect police from dangerous instrumentalities. [*Mesa*] at 109, citing *South Dakota v. Opperman* (1976), 428 U.S. 364, 369. Because inventory searches are unrelated to criminal investigations, probable cause is not implicated, but rather the validity of the search is judged by the reasonableness standard. *State v. Hobbs*, 8th Dist. No. 85889, 2005-Ohio-3856, ¶ 20.

{¶14} Here, we must determine whether the inventory search was done for the purpose explained above or whether it was a pretextual search carried out for investigative purposes.

{¶15} In *Smartt,* the police received a radio bulletin about a man with a gun in a red BMW parked outside a nightclub. Officers were dispatched to that location and arrested the man after seeing the gun in plain view. The officers also discovered cocaine during an inventory search. The trial court suppressed the evidence and this court agreed finding that,

> [w]here an investigative stop is made in response to a police radio broadcast, the burden is upon the state to show the factual basis for the stop, at a hearing on a motion to suppress. The specific nature of the information contained in a police bulletin cannot alone be used to prove that the action of the police was based upon reliable information. (Citations omitted.) *Id.*, 61 Ohio App.3d at 138, 572 N.E.2d 204.

Here, there was no investigative stop. Appellant was stopped for speeding.

{¶16} To stop a person suspected of being wanted for criminal activity in reliance on a flyer or bulletin, the state has the burden to show that the officer making the stop acted in objective reliance on the information contained within, the issuing agency for the

bulletin or flyer possessed a reasonable suspicion justifying the stop, and that the stop that in fact occurred was not significantly more intrusive than would have been permitted the issuing department. *United States v. Hensley*, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985).

{¶17} However, no investigatory stop was made here. Appellant was validly stopped for speeding and arrested because of an active warrant. "An arrest warrant charges law-enforcement officers to arrest the person for whom the warrant was issued. R.C. 2935.02; Crim.R. 4(D)." *State v. Walker-Stokes*, 180 Ohio App.3d 36, 2008-Ohio-6552, 903 N.E.2d 1277, ¶ 38 (2d Dist.). An arrest warrant issued by a court is different from a flyer or bulletin.

{¶18} When police act in good faith on a warrant, even when the warrant is invalid for some reason, the U.S. Supreme Court has held that evidence obtained as a result of the good faith reliance should not be suppressed. *Herring v. U.S.*, 555 U.S. 135, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009), citing *United States v. Leon*, 468 U.S. 897, 921, 104 S.Ct. 3405, 82 L.Ed.2d 677, fn.22 (1984).

{¶19} The trial court accepted the warrant information printout that was supplied to Officer Borgia from his in-car computer system and his testimony that the warrant was confirmed by Bedford during the stop as proof of the validity of an active warrant for appellant's arrest.[1] Citing to case law dealing with flyers, bulletins, and radio

---

[1] It is troubling that the state did not introduce the Bedford warrant. This simple step would have disposed of several of appellant's arguments on appeal.

broadcasts, appellant claims that Officer Borgia did not act reasonably in this case and that the state did not introduce evidence of the reliability of the information contained in the warrant.

{¶20} Here, Officer Borgia acted reasonably in arresting appellant on an outstanding warrant.

{¶21} Appellant also argues that Officer Borgia did not confirm the warrant before beginning the search, and therefore, he did not have any basis for doing an inventory search. However, Officer Borgia testified that he immediately arrested appellant for the warrant, and that its status as an active warrant was confirmed shortly thereafter.

{¶22} The state produced a printout of the officer's in-car computer system that showed the warrant information as Officer Borgia saw it when he entered the license plate of the vehicle he stopped. It indicated that appellant had an outstanding traffic warrant from the city of Bedford and that the individual was armed and dangerous. Officer Borgia testified that the driver of the vehicle matched the description included with the warrant and that the photograph from the Department of Motor Vehicles that came up on his screen closely resembled the person driving the vehicle. Officer Borgia also did not ask to see appellant's driver's license, vehicle registration, and proof of insurance as he normally does in a traffic stop because, he testified, he was arresting appellant and transporting him to Bedford because of the active warrant.

{¶23} Appellant argues that the search was for investigative purposes, not an inventory search, and that there is some evidence to that effect. Officer Borgia testified

that upon opening the driver's door when he started his search, he noticed a large number of air fresheners in the vehicle. He testified that this raised suspicion in his mind. He then opened the glove compartment on the passenger side, and a bag of marijuana fell out. However, the inventory sheet indicates that an inventory search was initiated within minutes of appellant's arrest and not as some afterthought used to justify a search.

{¶24} The state, arguing various other inapplicable exceptions to the warrant requirement, attempts to suggest that Officer Borgia had probable cause to search the vehicle and the trunk. No such exceptions, other than an inventory search and possibly inevitable discovery based on an inventory search, apply in this case. Officer Borgia did not have probable cause to search the vehicle according to *Arizona v. Gant,* 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009).

{¶25} In *Gant*, the Court held that "police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest[,]" unless another exception to the warrant requirement applies. *Id*. at 351.

{¶26} No evidence of the crime for which the stop was initiated — speeding — could reasonably be expected to be found within the vehicle. Also, appellant was under arrest and not in the vehicle when the search was conducted. He would not gain access to or be returned to the vehicle where he could regain possession of some contraband or weapon. This case hinges on the validity of the inventory search.

{¶27} *Gant* and similar cases from this district have addressed searches of a lawfully parked vehicle and upheld the suppression of evidence. *State v. Thomas*, 8th Dist. No. 91891, 2009-Ohio-3461, ("When a vehicle is legally parked, police may not search it incident to arrest and conduct an inventory search"). However, where a vehicle is validly subject to impoundment, this court and others have held that an inventory search is a valid procedure to ensure the safety of the owner's property and to protect police and towing contractors from claims of damage. *State v. Kemp*, 8th Dist. No. 95802, 2011-Ohio-4235; *State v. Swinderman*, 5th Dist. No. 2009-AP-100050, 2010-Ohio-2659.

{¶28} In demonstrating that the vehicle was subject to tow, Officer Borgia testified that the vehicle was parked on the left-hand median on I-271 during a period of heavy traffic. He stated the vehicle could not be left there, and no one else was available to drive it. The state produced the village of Orange local ordinance and procedure for towing a vehicle, which fit the situation presented in this case. A tow truck was called, and an inventory sheet was started minutes after appellant's arrest. Under these circumstances, the trial court's determination that contraband was discovered during a valid inventory search was the correct one.

{¶29} Appellant, in his reply brief, relies on *United States v. Lopez,* 567 F.3d 755 (6th Cir.2009) as a case factually similar. However, *Lopez* does not consider the inventory exception in its opinion. It appears not to have been raised in that case. It is raised here, and we continue to hold that police may search a vehicle to conduct an

inventory prior to impounding or towing it, as recognized in *Mesa*, 87 Ohio St.3d 105, 717 N.E.2d 329 (1999). *Gant* did not address the inventory exception because the vehicle in that case was lawfully parked, and we decline to extend its holding to a context not considered therein.

### B. Maximum Term of Incarceration

**{¶30}** Appellant next argues that he "was denied due process of law when the court sentenced [him] to a maximum term of imprisonment based upon impermissible factors."

**{¶31}** The Ohio Supreme Court has set forth the proper standard for the review of sentencing determinations made in felony cases in *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, which was adopted by this court as recognized in *State v. Brunning*, 8th Dist. No. 95376, 2011-Ohio-1936, ¶ 16, fn.2.

**{¶32}** Appellate courts must first "examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law." *Kalish* at ¶ 4. If this first prong is satisfied, then we review the trial court's decision under an abuse-of-discretion standard. *Id.* To constitute an abuse of discretion, the ruling must be unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

**{¶33}** There is no argument here that the sentence is outside the statutory range, so we must determine if the trial court abused its discretion in imposing a maximum term for a third-degree felony conviction of drug trafficking.

**{¶34}** R.C. 2929.11(A) provides that

> a court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing. The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both.

**{¶35}** R.C. 2929.12 provides a nonexhaustive list of factors a trial court must consider when determining the seriousness of the offense and the likelihood that the offender will commit future offenses.

**{¶36}** In the present case, appellant argues he received the maximum sentence based on improper findings by the trial court. During the sentencing hearing, after appellant indicated he had no job and started selling marijuana to support his family, the trial court stated:

> So you thought you'd destroy the lives of some other people's children by dealing in marijuana; is that it?

> I'll feed my children by destroying other people's children. I'll provide drugs, marijuana, to other people's children, but I'll use the proceeds to feed my children. That's not a net positive for the community is it, Mr. Sanders?

**{¶37}** Appellant points to this statement and the fact that no victim impact statement or other evidence from victims appears in the record. However, the trial court

also stated that it considered all required factors in crafting appellant's sentence. The fact that at the time of sentencing appellant was also being sentenced on another drug case he had been arrested on while this case was pending indicates the court did not abuse its discretion in imposing the maximum sentence for drug trafficking. Appellant's disregard for the laws relating to the sale of controlled substances indicates that the need for incapacitating the offender was high in this case. R.C. 2929.11(A).

{¶38} The trial court was not required to make findings in order to impose a maximum sentence. *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, ¶ 97. The trial court's discussion about the harm to the community is also not an improper factor. *State v. Hudson*, 8th Dist. No. 83359, 2004-Ohio-1452, ¶ 13; *State v. Sieng*, 10th Dist. No. 06AP-852, 2007-Ohio-1502, ¶ 17; *State v. Hess*, 5th Dist. No. 2003-CA-00098, 2004-Ohio-7311.

{¶39} The trial court did not abuse its discretion in sentencing appellant to five years in prison.

### C. Plea Colloquy

{¶40} Appellant finally argues that he "was denied due process of law when the court did not inform [him] of the effect of the no-contest plea."

{¶41} Crim.R. 11(C) governs the process that a trial court must use before accepting a felony plea of guilty or no contest. With respect to the required colloquy, Crim.R. 11(C)(2) provides:

In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:

(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶42} The analysis differs based on the type of right alleged to have been deficiently explained. *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621. Two standards have developed depending upon whether the right is a constitutional or nonconstitutional one. In explaining constitutional rights, the trial court must strictly comply with Crim.R. 11, while nonconstitutional rights require only substantial compliance. *Id.* at ¶ 14-15.

{¶43} Appellant complains that the trial court's explanation of the effect of a no contest plea was deficient. This is addressing a nonconstitutional right, which means that the trial court must substantially comply with this mandate. "'Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving.'" *Id.* at ¶ 15,

quoting *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990).   "Furthermore, a defendant who challenges his * * * plea on the basis that it was not knowingly, intelligently, and voluntarily made must show a prejudicial effect."   *Id*.

{¶44} Here, the trial court explained:

Court: And you do understand that if you plead no contest, you're not telling me you're guilty, right?

Sanders: Right.
Court: But you're going to end up getting convicted of it anyway, right?

Sanders: Yes ma'am.

Court: By pleading no contest, you hope, will preserve your ability to take the Court's ruling on the suppression motion to the Court of Appeals to see if they agree or disagree, right?

Sanders: Yes ma'am.

{¶45} After this exchange, the trial court also explained the consequences of pleading guilty, and then the court informed appellant of the rights he was giving up and the possible penalties in a thorough colloquy.   Appellant argues that the trial court must inform him that "[t]he plea of no contest is not an admission of defendant's guilt, but it is an admission of the truth of the facts alleged in the indictment, information, or complaint, and the plea or admission shall not be used against the defendant in any subsequent civil or criminal proceedings."

{¶46} "'The essence of the "no contest" plea, is that the accused cannot be heard in defense.'"   *State ex rel. Stern v. Mascio,* 75 Ohio St.3d 422, 424, 662 N.E.2d 370, 373 (1996), quoting *State v. Herman*, 31 Ohio App.2d 134, 140, 286 N.E.2d 296 (6th

Dist.1971), quoting Rueger, *Schneider's Ohio Criminal Code* 49, Section 10.1, fn. 4 (3d Ed.1963). Where a trial court at least partially addressed the effects of a no contest plea and the colloquy is not otherwise infirm, the appellant must make a showing of prejudice in order to withdraw a plea. *State v. Singleton*, 169 Ohio App.3d 585, 2006-Ohio-6314, 863 N.E.2d 1114 (2d Dist.). This showing can be made by demonstrating that appellant would not otherwise have made the plea. *Veney* at ¶ 15.

{¶47} Here, appellant stated on the record that his attorney had explained the various options he had and that he had chosen to plead no contest and appeal the trial court's decision regarding his motion to suppress. The court's full advisement of the effect of a no contest plea would have made no difference in this case. Also, appellant has made no argument that he was prejudiced or that he would have not pled no contest if this advisement was given.

{¶48} Substantial compliance is sufficient for this nonconstitutional right, and the court's explanation is sufficient where appellant has made no argument regarding prejudice.

### III. Conclusion

{¶49} Evidence of drug trafficking was discovered during a valid inventory search where appellant was arrested pursuant to an active warrant and the vehicle was going to be towed. Therefore, the trial court did not err in denying appellant's motion to suppress. The trial court also did not err in imposing the maximum sentence where appellant was convicted in another drug case as he was awaiting trial in the instant case. Finally, the

trial court's colloquy on the effect of a no contest plea, while sparse, was at least something, requiring appellant to show prejudice in order to withdraw his plea. No prejudice was shown here. Therefore, appellant's convictions for drug trafficking and possession of criminal tools are affirmed.

**{¶50}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


FRANK D. CELEBREZZE, JR., JUDGE

PATRICIA ANN BLACKMON, A.J., and
KENNETH A. ROCCO, J., CONCUR